**EASTERN AIR LINES, INC., Plaintiff,**

v.

**ATLANTIC RICHFIELD COMPANY, Defendant,**

**United States Department of Energy, the Honorable James R. Schlesinger, Secretary of Energy, Economic Regulatory Administration and the Honorable David Bardin, Administrator of the Economic Regulatory Administration, Unaligned Third Parties.**

**No. 74–1207–Civ–SMA.**

United States District Court, S. D. Florida, Miami Division.

May 4, 1979.

Donald L. Rickertsen, Gambrell, Russell & Forbes, Atlanta, Ga., James Knight, Walton, Lantaff, Schroeder & Carson, Miami, Fla., for plaintiff.

Lawrence R. Metsch, Paul, Landy & Beiley, Miami, Fla., Michael J. Myers, Atlantic Richfield Co., Los Angeles, Cal., for defendant.

Thomas H. Kemp, U. S. Dept. of Energy, Washington, D. C., Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., for unaligned third parties.

## MEMORANDUM OPINION

ARONOVITZ, District Judge.

IN CONNECTION with the so-called "energy crisis" of 1973, Eastern was required by the United States Government to purchase aviation jet fuel from Atlantic Richfield ("ARCO") at Chicago's O'Hare International Airport and at Dallas' Love Field during the period November 1, 1973, to October 24, 1974. Because no contract existed between Eastern and ARCO during the period, the prices charged for the purchased fuel, as well as the requirement to buy from ARCO, were governed by the Mandatory Petroleum Price Regulations promulgated by the Cost of Living Council (the "CLC") in August, 1973. The CLC's regulations were subsequently adopted and amended by the CLC's successors: the Federal Energy Office (the "FEO"); the Federal Energy Administration (the "FEA"); and the Federal Parties.

This action was commenced in 1974 by Eastern to recover alleged overcharges (prices in excess of those allowable under the Mandatory Petroleum Price Regulations) for the jet fuel Eastern was required to purchase from ARCO. The case is a private action pursuant to the statutes initially authorizing the Mandatory Petroleum Price Regulations: the Economic Stabilization Act of 1970, as amended, 12 U.S.C. Section 1904 note, and the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. Section 751 et seq. Under Section 210 of the Economic Stabilization Act, Eastern seeks recovery from ARCO of a sum equivalent to three (3) times the amount of ARCO's alleged overcharges for the fuel delivered to Eastern at Chicago and Dallas during the relevant period, plus costs and reasonable attorneys' fees. ARCO has denied overcharging Eastern for the fuel in question and has challenged Eastern's entitlement to relief under the statutes cited, even assuming that overcharges were made.

As one of several affirmative defenses to Eastern's claims, ARCO pleaded a "passing on" defense. The defense alleged that Eastern had recovered from the riding and shipping public all the increased costs for jet aviation fuel incurred during the period relevant to this action by means of passenger tariff and cargo rate increases authorized by the Civil Aeronautics Board (CAB), an independent regulatory agency of the United States Government. Consequently, according to ARCO's "passing on" affirmative defense, Eastern is not entitled to recover from ARCO the alleged overcharges which Eastern claims were inflicted upon it during the period November 1, 1973, to October 24, 1974.

On May 26, 1978, Eastern pursuant to Rule 12(c) of the Fed.R.Civ.P. moved for a Judgment on the Pleadings with respect to ARCO's "passing on" affirmative defense.[1] This Motion challenges the sufficiency of the defense as a matter of law. Discovery on the "passing on" defense has been deferred until resolution of this motion.[2]

In a line of cases going back to *Southern Pacific Co. v. Darnell-Taenzer Lumber Co.,* 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451 (1918), the Supreme Court has rejected the "passing on" defense in overcharge cases. *See, e. g. Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968); *Adams v. Mills,* 286 U.S. 397, 52 S.Ct. 589, 76 L.Ed. 1184 (1932).

In *Hanover Shoe, supra,* the Court reviewed exhaustively the "passing on" defense. Defendant, United Shoe, allegedly had a monopoly over shoe machinery, which it used to extract excessive machinery rentals. Plaintiff, a lessor of Defendant's machinery, sought recovery for the rental overcharges and prevailed in the District Court. The Third Circuit affirmed. In the Supreme Court, the Defendant argued that Hanover was not entitled to recover because the illegal overcharge under the leasing system was "passed on" down the stream of commerce and reflected in the price of the shoes Hanover sold to its customers.

Affirming the Judgment below, the Supreme Court rejected this "passing on" defense. Discussing the defense in the context of the Clayton Act antitrust case before it, the Court held that

> when a buyer shows that the price paid by him for materials purchased for use in his business is illegally high and also shows the amount of the overcharge, he has made out a prima facie case of injury and damage.

392 U.S. at 489, 88 S.Ct. at 2229. In discussing the alternative responses of a buyer who has been overcharged, the Court noted that, without dispute, a buyer who absorbs the loss or maintains his profit level by increasing volume or decreasing other costs would have a clear right to damages. In considering the buyer who raises his prices and thereby passes on some or all of the overcharges the Court held that

> the buyer is equally entitled to damages if he raises the price for his own product. As long as the seller continues to charge the illegal price, he takes from the buyer more than the law allows. At whatever price the buyer sells, the price he pays the seller remains illegally high, and his profits would be greater were his costs lower.

392 U.S. at 489, 88 S.Ct. at 2229.

Based upon the Supreme Court cases rejecting the "passing on" defense,[3] Eastern urges the Court to find that ARCO's assertion of the defense in the case at bar is insufficient as a matter of law.

ARCO presents two basic arguments in opposition. First, ARCO argues that the facts of this case fit within the cost-plus contract exception discussed in *Hanover Shoe.* Second, ARCO relies on language

**1.** In challenging the legal sufficiency of fewer than all of the defenses raised in Defendant's pleading, Plaintiff should have proceeded under Rule 12(f) and filed a Motion to Strike rather than under Rule 12(c). 5 Wright & Miller, *Federal Practice & Procedure,* Section 1369, at p. 699. Accordingly, Plaintiff's Motion for Judgment on the Pleadings as to the "Passing On Defense" will be treated as a Motion to Strike those paragraphs in Defendant's pleadings raising the "passing on" defense.

**2.** ARCO, on June 13, 1978, filed a Motion to Compel Eastern to answer interrogatories and produce documents concerning ARCO's "passing on" defense. Eastern, on June 22, 1978, filed a Motion to Strike ARCO's Motion and

Alternatively a Motion for a Protective Order on "passing on" discovery pending a ruling on its Motion for Judgment on the Pleadings as to the defense. However, by letters dated July 12, August 4, September 12 and December 13, 1978, counsel for both Eastern & ARCO have agreed to defer all discovery matters relating to the defense until the Motion for Judgment on the Pleadings is resolved.

**3.** *See also Illinois Brick Company v. State of Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) in which the Supreme Court adhered to the views expressed in *Hanover Shoe* and rejected an attempt to use the "passing on" doctrine offensively.

contained in the Temporary Emergency Court of Appeal's ("TECA") decision in *Longview Refining Company v. Shore,* 554 F.2d 1006, *cert. denied,* 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977), and argues that TECA thereby approved the use of a "passing on" defense in cases brought under the Economic Stabilization Act. This Court finds that the defense is unsupportable under either of the foregoing theories.

## A. THE "COST–PLUS CONTRACT" EXCEPTION IN HANOVER SHOE

ARCO concedes that the Supreme Court in *Hanover Shoe* severely restricted the availability of the "passing on" defense, but argues that the circumstances of this case fit within the exception discussed by the Court in *Hanover Shoe.* The so-called "cost-plus contract" exception cited by ARCO is contained in the following portion of Justice White's opinion:

> We recognize that there might be situations—for instance, when an overcharged buyer has a pre-existing "cost-plus" contract, thus making it easy to prove that he has not been damaged—where the considerations requiring that the passing-on defense not be permitted in this case would not be present.

392 U.S. at 494, 88 S.Ct. at 2232.

Eastern Airlines had no pre-existing cost-plus contracts with their air passengers, but ARCO argues that the facts and circumstances of this case present a "functional equivalent" of a cost-plus contract. At Oral Argument on this matter on February 17, 1979, counsel for ARCO summarized its prima facie case for asserting the defense as follows:

> [D]uring the period of time involved, the Civil Aeronautics Board, through published regulations [and decisions], announced its policy. [T]he airlines who were caught in the energy crisis of 1973 and 1974 would be permitted to pass on to the riding and shipping public their increased fuel costs.

Transcript of Hearing, February 17, 1979, at p. 19.

Eastern argued that it would be impossible to establish a direct correlation between increased fuel costs and increased fares. Even if ARCO could establish that increased fuel costs were fully recovered in higher fares, a task that would require extensive discovery, this Court believes that *Hanover Shoe* compels a finding that the "passing on" defense asserted in this case is insufficient as a matter of law.

The Court in *Hanover Shoe* indicated that an exception to its holding rejecting the "passing on" defense might apply "where the considerations requiring that the passing-on defense not be permitted in this case would not be present." 392 U.S. at 494, 88 S.Ct. at 2232. However, some of the considerations important to the Court's decision in *Hanover* do apply to this case. For example, the Supreme Court noted that one analytical problem with the passing on defense is the difficulty of determining "in the real economic world rather than an economist's hypothetical model, . . . what effect a change in a company's price will have on its total sales." 392 U.S. at 493, 88 S.Ct. at 2231.

This statistical difficulty would exist in the present case if the Court permitted ARCO to pursue the "passing on" defense. Even if ARCO could establish that fares were increased to cover fuel cost increases, ARCO would still have to establish that the fare increase did not affect Eastern's total sales. If fewer people flew because of higher fares, Eastern was damaged by the overcharges even if the overcharges were passed on.

ARCO claims that through discovery and the use of expert consultants, it could establish that any overcharges were passed on without affecting Eastern's profits. *See* Transcript of Hearing, February 27, 1979, pp. 21–26. But, returning as we must to the language in *Hanover Shoe,* the Court therein described the circumstances in which the exception could apply as one in which "an overcharged buyer has a *pre-existing* 'cost-plus' contract, thus making it *easy to prove* that [the buyer] has not been damaged." 392 U.S. at 494, 88 S.Ct. at

2232. (emphasis added). At best, ARCO can establish that the CAB regulations create the "functional equivalent" of a cost-plus contract. ARCO cannot overcome the obstacle created by the absence of a pre-existing contract, however, and without this, it would be anything but "easy to prove that (Eastern) has not been damaged." In sum, this Court believes that this case is outside the scope of the exception described by the Supreme Court in *Hanover Shoe*. Treating ARCO's "functional· equivalent" characterization as within the cost-plus exception and thereby allowing it to pursue its "passing on" defense would open the door to a new area of extensive discovery in this already long and complex litigation. And, this discovery would undoubtedly bring to the lawsuit the difficult and burdensome statistical problems that the Supreme Court meant to exclude from these illegal overcharge cases.

The post *Hanover Shoe* Court of Appeal's decisions cited by ARCO do not alter our decision. In *Minnesota v. United States Steel Corp.*, 438 F.2d 1380 (1971), the Eighth Circuit remanded the case *in part* to require the Plaintiffs to answer a "passing on" type interrogatory. However, the unusual circumstances of that case, including the fact that the discovery would not require "undue effort," are too dissimilar to support the extensive "passing on" discovery that would be generated here.

The Fifth Circuit's decision in *Yoder Bros. v. California-Florida Plant Corp.*, 537 F.2d 1347 (1976) *cert. denied*, 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977) is stronger authority for Eastern than for ARCO. In *Yoder*, a plant breeder attempted to assert a "passing on" defense in an antitrust counterclaim. The court noted first that the ultimate question of the availability of the defense should be determined as a matter of law by the Court. Then in rejecting the defense in that case, the Court quoted extensively from *Hanover Shoe* and noted that the proponent of a "passing on" defense must overcome the "almost 'insurmountable' burden of showing that the factors that led the Supreme Court to reject the pass-on defense do not apply." 537

F.2d at 1375. The Court concluded that the defendant had failed to meet the necessary burden because of, *inter alia*, the uncertain impact of higher prices on total sales in the absence of pre-existing contracts. *Hanover Shoe*, as interpreted and applied by the court in *Yoder*, does not permit the assertion of the "passing on" defense in this case.

### B. THE TECA DECISION IN LONG-VIEW REFINING COMPANY V. SHORE

In *Longview Refining Company v. Shore, supra*, gasoline retailers brought suit against two refiners under Section 210 of the Economic Stabilization Act of 1970, as amended, and the Emergency Petroleum Allocation Act of 1973, as amended, to recover alleged price overcharges for the "covered product." The District Court rendered judgment for the plaintiffs and the defendants appealed. TECA, in reversing the trial court's judgment, directed as follows:

> On remand, the district court should order the FEA, which has expertise and responsibility with respect to interpreting, applying and enforcing the statutes and the pricing regulations in controversy, *including corrective action for any unlawful price increase passed down the stream of commerce by a plaintiff*, to be joined as a party to this litigation. (emphasis supplied).

554 F.2d at 1024. ARCO believes that the foregoing language constitutes a statement by TECA approving the "passing on" defense in suits brought under the Economic Stabilization Act and Emergency Petroleum Allocation Act.

This Court does not believe that TECA in *Longview* intended to expand the "passing on" defense in derogation of *Hanover Shoe*. TECA's reference to price increases passed downstream by a plaintiff must be read in the context of the previous sentence referring to FEA expertise. In *Longview*, both the plaintiff gasoline "middlemen" and the defendant refiners were subject to FEA

regulation. Therefore, both the prices charged by the defendants and the downstream prices charged by the plaintiffs were subject to control and corrective action by the FEA. This Court reads the above quoted language in *Longview* as simply an expression of opinion on the possible legal effect of passed on price increases by Plaintiffs in overcharge cases in which the Plaintiffs are subject to FEA regulation.

Accordingly, after full consideration of the record, including the Memoranda of Law and Oral Arguments by respective counsel, and review of the applicable case authority, it is—

ORDERED AND ADJUDGED that Plaintiff's Motion for Judgment on the Pleadings as to ARCO's "Passing On" Defense is treated by this Court as a Motion to Strike said defense and is hereby GRANTED.

Pursuant to Section 211(d)(2) of the Economic Stabilization Act of 1970, as amended, (12 U.S.C. Section 1904 note), appeals from interlocutory decisions by a district court may be taken in accordance with 28 U.S.C. Section 1292(b). This Court believes that the Order rendered herein involves an important issue of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation. Accordingly, pursuant to the aforementioned statutory authority, ARCO may seek an immediate appeal from this Order subject to the discretion vested in TECA to permit the appeal.

DONE AND ORDERED at Miami, Florida, this 4 day of May, 1979.