POWERINE OIL COMPANY, a California corporation, Plaintiff-Appellee,

v.

The CITY OF LONG BEACH, a municipal corporation; James H. Gray, Harry E. Ridings, Jr., and Richard G. Wilson, as members of the Board of Harbor Commissioners of the City of Long Beach; Don Phillips, Wallace Edgerton, Renee B. Simon, Thomas J. Clark, Ernie Kell, James H. Wilson, Eunice N. Sato, Wes Carroll, Jr., and Russell Rubley, as members of the City Council of the City of Long Beach; John E. Dever, as City Manager of the City of Long Beach; and Leonard W. Brock, as General Manager of the Department of Oil Properties of the City of Long Beach, Defendants-Appellants.

No. 9–84.

Temporary Emergency Court of Appeals.

Submitted on the Briefs and Record on Appeal.

Decided Sept. 14, 1984.

Robert W. Parkin, City Atty., and Richard A. Alesso, Deputy City Atty., Long Beach, Cal., were on the brief, for defendants-appellants.

Lisa S. Katz and Richard T. Williams, Kadison, Pfaelzer, Woodward, Quinn & Rossi, Los Angeles, Cal., were on the brief, for plaintiff-appellee.

Before ZIRPOLI, MacBRIDE and CRAIG, Judges.

ZIRPOLI, Judge.

Appellant City of Long Beach raises three issues in this appeal from the judgment entered against it on its second and third counterclaims and on plaintiff Powerine Oil Company's claim for recovery of overcharges under § 210(b) of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note, as incorporated in the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751 *et seq.* The judgment was entered following cross-motions for summary judgment based upon a stipulated set of facts. As is discussed more fully below, this court finds no merit in appellant's arguments and accordingly affirms the judgment of the District Court in its entirety.

### FACTS

In December of 1972, Long Beach, the owner of certain oil-producing properties

known as the Wilmington field, entered into a written contract with plaintiff and cross-defendant Powerine Oil Company under which Powerine was obligated to buy oil from Long Beach at a price of $0.327 per barrel over a base price to be computed by averaging the posted prices of other major purchasers in the Wilmington field. By the terms of the contract, it was to expire on July 1, 1975. By virtue of the mandatory allocation regulations adopted pursuant to the Emergency Petroleum Allocation Act of 1973, however, Long Beach was required to, and did, continue to sell oil to Powerine after the expiration date specified in the contract. *See* 10 C.F.R. § 211.-63. In addition, by virtue of price ceilings which became applicable commencing February 22, 1974, Long Beach could no longer lawfully charge the $0.327 per barrel bonus provided for under the terms of the contract. *See* 10 C.F.R. § 212.52, 39 Fed.Reg. 12252 (April 4, 1974). Nevertheless, Long Beach continued to invoice Powerine, and Powerine continued to pay (under protest) the full contract price from February 27, 1974 through January 31, 1975. This resulted in Powerine being charged $205,-346.21 in excess of the applicable ceiling price specified in the Federal Energy Administration regulations (10 C.F.R. § 212.-73). Commencing January 31, 1975, Powerine refused to pay any further bonuses, and Long Beach ceased billing any bonus premiums in its invoices to Powerine. Powerine brought this suit on August 2, 1977, to recover the overcharges.

Long Beach filed counterclaims seeking recovery of $271,824.32 in alleged underpayments by Powerine for the period October 1, 1976 through May 31, 1978 (second counterclaim)[1] and for $42,973.32 in alleged underpayments for the period November 1, 1977 through May 31, 1978 (third counterclaim). The second counterclaim alleged that Powerine was required to pay the bonus provided for under the contract, to the extent that the bonus did not exceed the ceiling price under the regulations, even though the contract under which

Long Beach claimed entitlement to the bonus had expired over one year earlier. Long Beach contended that the supplier/purchaser rule, which required it to continue selling crude oil to Powerine, extended the price terms of the contract beyond the specified expiration date. Long Beach alleged in its third counterclaim that Powerine had improperly computed the base price which it paid for the oil. Long Beach contended that Powerine should not have utilized a price posted by Lion Oil Company in computing the average posted price of purchasers in the Wilmington field because the Lion posting was not a bona fide offer to purchase oil. Long Beach relies upon the fact that the Lion posting did not attract any sellers to support its contention that it was not a bona fide offer.

### RULING BELOW

The District Court ruled that the supplier/purchaser rule did not operate so as to extend the pricing terms of the contract between Powerine and Long Beach beyond the expiration date specified in that contract. Accordingly, since there was no enforceable contract in effect after July 1, 1975, the court granted summary judgment in favor of Powerine on Long Beach's second and third counterclaims, both of which were premised upon the continuation of pricing terms of the contract. The District Court also granted summary judgment in favor of Powerine on its claim for overcharges even though Powerine had not proven that it did not pass on the overcharges to its customers, and so had not proven any actual damage.

### ISSUES

Long Beach contends that the District Court erred in concluding that the supplier/purchaser rule did not extend the pricing terms of its contract with Powerine beyond the specified expiration date. Therefore, Long Beach argues, Powerine was required to pay the full contract price, including the $0.327 per barrel bonus, to

---

**1.** Long Beach has not appealed from the judgment entered against it on its first counterclaim.

the extent that it did not exceed the ceiling price under the regulations. Similarly, Long Beach argues that Powerine violated the pricing terms of the extended contract by utilizing the Lion posting in computing the base price which it paid to Long Beach. Finally, Long Beach contends that Powerine should have been required to prove actual damages (i.e. that it did not pass on the amount of the overcharge) before it could recover from Long Beach on the overcharge claim.

## DISCUSSION

Long Beach has cited no authority which supports its contention that the supplier/purchaser rule [2] extended the pricing terms of contracts beyond their specified expiration date. The Federal Energy Administration, which promulgated the Mandatory Petroleum Administration, which promulgated the Mandatory Petroleum Allocation Regulations pursuant to the directive of the Emergency Petroleum Allocation Act of 1973 stressed that "it is the supplier/purchaser relationship in effect under contracts for sales, purchases, and exchanges of domestic crude oil on December 1, 1973, rather than the contracts themselves which are to remain in effect ...." 39 Fed.Reg. 3908 (January 30, 1974). *See also* 41 Fed.Reg. 7387 (February 18, 1976) (FEA amendments were intended to make "it clear that the supplier/purchaser relationships in effect on December 1, 1973, rather than the related contracts, were to remain in effect under the rule."). Both of the cases cited by Long Beach in support of its position dealt with operating agreements governing oil producing properties *which were still in effect,* so no question of extending the terms of a contract that had expired was presented. *See Condor Operating Co. v. Sawhill,* 514 F.2d 351, 355

(TECA 1975); *California State Lands Comm'n,* 2 FEA ¶ 80,509 (1975).

Long Beach argues that unless the pricing terms of the contract are extended by the supplier/purchaser rule, sellers of crude oil would be left "in a contractual vacuum" where they would be at the mercy of the buyer's dictates. This argument is meritless. The supplier/purchaser rule clearly provided that Long Beach could have sought a higher price from other purchasers, and if Powerine did not meet an offer of a higher price, Long Beach would be relieved of its obligation to sell to Powerine. 10 C.F.R. § 211.63(a)(3).

■ This court concludes that the supplier/purchaser rule did not extend the contract between Powerine and Long Beach beyond its specified expiration date, and therefore affirms the ruling of the District Court granting summary judgment in favor of Powerine on Long Beach's counterclaims. Since the contract expired on July 1, 1975, Long Beach cannot seek to enforce any pricing terms of that contract as to sales which took place after that date.

■ Long Beach's remaining argument in this appeal is that plaintiffs seeking the recovery of overcharges under § 210 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note, must prove that they did not pass on such overcharges to their customers before they can recover against their supplier. This argument has consistently been rejected by this court. *See Gulf Oil Co. v. Dyke,* 734 F.2d 797, 809 (TECA 1984); *Eastern Airlines, Inc. v. Atlantic Richfield Co.,* 609 F.2d 497 (TECA 1979), *aff'g* 470 F.Supp. 1050 (S.D.Fla.). Long Beach's attempts to distinguish these cases are unpersuasive.

## CONCLUSION

The decision of the District Court is affirmed.

---

**2.** "All supplier/purchaser relationships in effect under contracts for sales, purchases, and exchanges of domestic crude oil on December 1, 1973, shall remain in effect for the duration of this program ... provided, however, that ... the provisions of this paragraph shall not apply to the seller of any crude oil if the present

purchaser of such crude oil refuses, after notice by the seller, to meet any bona fide offer made by another purchaser to buy such crude oil at a lawful price above the price paid by the present purchaser." 10 C.F.R. § 211.63, 39 Fed.Reg. 11290 (May 14, 1974).